SAXONVILLE MILLS *v.* RUSSELL, Collector.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
DISTRICT OF MASSACHUSETTS.

Argued December 4, 1885.—Decided December 14, 1885.

The proviso in § 7 of the act of March 3, 1865, 13 Stat. 491, 494, "That the
duty shall not be assessed upon an amount less than the invoice or entered
value," and the like proviso in § 9 of the act of July 28, 1866, 14 Stat. 328,
330, are applicable to the valuation of wools, for the purpose of determining
the rate of duty chargeable upon them under the acts of March 2, 1867, 14
Stat. 559, and June 6, 1872, 17 Stat. 230.

In construing a tariff revenue system, consisting of numerous acts enacted at
different times, each alteration is to be regarded in connection with the
system, and existing legislative rules of general application are not to be
disturbed beyond the clear intention of Congress.

This was an action brought by the plaintiff in error to re-
cover duties on certain importations of wool, alleged to have
been illegally assessed, in which judgment was rendered for the
defendant. It was brought here for review by writ of error.

In the Circuit Court judgment was rendered upon an agreed
statement of facts, set out in the record, as follows:

"The plaintiff, in August, 1873, imported into the port of
Boston from Rosario, by the bark Velox, three hundred and
twenty-four bales of unwashed Cordova wool and entered it in
bond. It subsequently withdrew the same for consumption.
The defendant, as collector of customs, assessed and exacted
of the plaintiff a duty of six cents per pound less ten per centum
on this wool upon the appraisement as hereinafter set forth.
The plaintiff claimed that this wool was only legally liable to a
duty of three cents per pound less ten per centum, and paid the
extra three cents per pound under due protest, and seasonably
appealed to the Secretary of the Treasury, who affirmed the de-
cision and action of the defendant. In due time and in con-
formity to law plaintiff brought this action to recover the extra
three cents per pound less ten per centum. The pleadings may

Statement of Facts.

be referred to.* As it appears by the invoice, this wool was bought in Rosario on the 28th day of March, 1873, and was shipped at Rosario on board the Velox for Boston on the 5th day of June, 1873, and the invoice was sworn to before the acting United States consul on the 9th day of June, 1873. Rosario was the last port from whence it was exported to the United

---

* *Note by the Reporter.*—The following extract from the record contains all the pleadings sent up from below, and referred to in the statement of facts made by the court :

THE SAXONVILLE MILLS, a corporation under the laws of the Commonwealth of Massachusetts, and having its principal place of business at Boston, in said Commonwealth, Plaintiff, *v.* THOMAS RUSSELL, late Collector of Customs for the Revenue District of Boston and Charlestown, Defendant.

In an action of contract.

1st count. And the plaintiff corporation says the defendant owes it seven thousand and seventy-six and $\frac{86}{100}$ dollars for money received by the defendant to the use of plaintiff corporation, according to the account hereto annexed.

ACCOUNT ANNEXED.

BOSTON, *April* 14, 1874.

Thos. Russell, ex-Collector, to Saxonville Mills,   Dr.

| | |
|---|---:|
| (1.) Jan'y 22, '74. To excess of duty paid on 100 bales of wool, entered per Velox, Aug. 23, 1873 | $2,184 30 |
| (2.) Feb. 6, '74. To excess of duty paid on 100 bales of wool, entered per Velox, Aug. 23d, 1873 | 2,184 30 |
| (3.) Feb'y 25, '74. To excess of duty paid on 60 bales of wool, entered per Velox, Aug. 23, 1873. | 1,319 50 |
| (4.) Jan. 6, '74. To excess of duty paid on 60 bales of wool, entered per Velox, Aug. 23, 1873 | 1,398 76 |
| | $7,076 86 |

Second count. And also for that, on the day of the purchase of this writ, the defendant, being indebted to the plaintiff corporation in the sum of seven thousand seventy-six and $\frac{86}{100}$ dollars demanded, exacted, and received of the plaintiff corporation, by the defendant, then and now collector of the customs for the revenue district of Boston and Charlestown, under color of a law of the United States for the collection of duties on imports (and by the plaintiff corporation paid under protest), and before that time had and received, by the defendant, to the use of the plaintiff corporation, in consideration thereof, promised to pay the same when he should be thereto afterward requested ; yet the said defendant has not paid the same or any part thereof, though thereto often requested ; and the plaintiff corporation alleges that both

States, and it was invoiced there and entered at the custom house in Boston at the price paid for it in the currency and weight in which it was bought, which, upon being reduced to United States currency and weight, showed the cost to be above twelve cents per pound. Between the time of purchase and the time of shipment and exportation to the United States, the market value or wholesale price of this wool fell at Rosario, and at the time and place of shipment and exportation to the United States the market value or wholesale price was less than twelve cents per pound excluding charges in such port or place. The acting United States consul made under his official seal the following certificate upon the invoice, which is objected to by the defendant as incompetent and immaterial :

"'U. S. Consulate, Rosario, *June 10th,* 1873.

"'I, Thomas B. Wood, acting United States consul for Rosario, do hereby certify, after investigation, that the market value of unwashed Cordova wool at this place at the date of shipment of the annexed invoice was thirty-two to thirty-two and one-half Bolivian reals, equivalent to [from] $24\frac{3.8}{100}$ to $24\frac{7.6}{100}$ reals fuerta per arroba net weight.

"'Given under my hand and seal, this day.
     "'(Signed)          Thomas B. Wood,
                   "'*Acting U. S. Consul.*'

"Which being reduced to United States weight and currency, shows a value per pound less than twelve cents at Rosario. In conformity with law and Treasury regulations upon entry of

---

the foregoing counts are for the same cause of action, to the damage of the said plaintiff, as it says, the sum of ten thousand dollars.

The writ in this cause is dated the fourteenth day of April, A.D. 1874, and was entered at the May term of this court, A.D. 1874, when and where the parties appeared by their respective attorneys. And on the eleventh day of September the following answer was filed, namely :

And now comes the said defendant, and for answer to the plaintiff's declaration and bill of particulars denies each and every allegation in each and every count thereof.

And the said defendant further says that he did not undertake or promise in manner and form, as the said plaintiffs have above complained. And of this he puts himself upon the country.

this merchandise by the plaintiff the proper number of designated packages thereof were sent to the public store, and this invoice was sent by the defendant as collector to the United States appraiser for his examination, appraisement, and report. The appraiser, after examination, made on the invoice the following report, and returned the same to the collector, as and for his appraisement, from which no appeal was claimed or taken to merchant appraiser: 'Wool, class 3, dutiable at invoice value six cents per pound, less ten per centum;' said report bearing date August 28, 1873, and upon this appraisement the collector assessed and exacted the duty as aforesaid. It is admitted and agreed, if it be material and competent, that the appraiser made the said report to the collector as and for his appraisement, believing that he had no legal right to appraise the wool at less than the invoice value, although in fact he believed the true market value of said wool at the last port or place whence exported to the United States, at the time of exportation, excluding charges thereat, was less than twelve cents per pound. The plaintiff contended that this was not a legal or sufficient appraisement. The defendant, as collector, exacted the duty of six cents per pound, less ten per centum, upon the ground that whatever the market value or wholesale price of this wool might have been in Rosario at the time of shipment and exportation, inasmuch as the invoice showed the value to be above twelve cents per pound, it was legally liable to the duty exacted. This wool was of the third class named in the first section of the act of March 2d, 1867, 14 Stat. 560, which provides 'that upon wools of the third class, the value whereof at the last port or place whence exported to the United States, excluding charges in such port, shall be twelve cents or less per pound, the duty shall be three cents per pound. Upon wools of the same class, the value whereof at the last port or place whence exported to the United States, including charges in such port, shall exceed twelve cents per pound, the duty shall be six cents per pound.'

"If the court shall be of opinion upon the foregoing facts that said duty was illegally assessed and exacted of the plaintiff, then judgment shall be entered for the plaintiff for an amount

equal to one-half of the duties paid in gold, with interest, to be ascertained by an assessor to be appointed by the court, and costs. On the contrary, if the court shall be of opinion that the duty was properly assessed and exacted, judgment shall be entered for the defendant, with costs."

*Mr. Charles Levi Woodbury* for plaintiff in error.

*Mr. Assistant Attorney-General Maury* for defendant in error.

MR. JUSTICE MATTHEWS delivered the opinion of the court. After stating the facts in the language reported above, he continued:

The duties chargeable upon the importations in question were levied and collected under § 1 of the act of March 2, 1867, "to provide increased revenue from imported wool and for other purposes." 14 Stat. 559. It provides that "from and after the passage of this act, in lieu of the duties now imposed by law on the articles mentioned and embraced in this section, there shall be levied, collected, and paid on all unmanufactured wool, hair of the alpaca, goat, and other like animals, imported from foreign countries, the duties hereinafter provided." For the purpose of fixing the duties to be charged thereon, the articles mentioned are divided into three classes, as follows: Class 1, clothing wool; class 2, combing wools; class 3, carpet wools and other similar wools, the last being "such as Donskoi, native South American, Cordova, Valparaiso, native Smyrna, and including all such wools of like character as have been heretofore usually imported into the United States from Turkey, Greece, Egypt, Syria, and elsewhere." The importations affected by this suit were of this class. It was further provided, that, "upon wools of the third class, the value whereof at the last port or place whence exported into the United States, excluding charges in such port, shall be twelve cents or less per pound, the duty shall be three cents per pound; upon wools of the same class, the value whereof at the last port or place whence exported to the United States.

excluding charges in such port, shall exceed twelve cents per pound, the duty shall be six cents per pound."

By the act of June 6, 1872, 17 Stat. 230, § 2, the duties on wool, imposed by the act of 1867, among other things, were reduced ten per centum of such duties.

As the value of the wool in question, at the last port or place whence exported into the United States, excluding charges in such port at the time of shipment, was less than twelve cents per pound, under these provisions of the law, standing alone, it would be subject to a duty of but three cents per pound, and it is contended by the plaintiff in error that the case is governed exclusively by these sections. But as the wool was bought in Rosario, and was shipped from there to the United States, and was invoiced there and entered at the custom house in Boston at the price paid for it in the currency and weight in which it was bought, which, upon being reduced to United States currency and weight, showed the cost to be above twelve cents per pound, it is contended on the part of the collector, that it was properly chargeable according to that value, with the duty actually exacted of six cents per pound.

This conclusion is based upon a proviso, occurring in § 7 of the act of March 3, 1865, "amendatory of certain acts imposing duties upon foreign importations," 13 Stat. 491, 493, and repeated in § 9 of the act of July 28, 1866, "to protect the revenue, and for other purposes," 14 Stat. 328, 330. The first of these sections is as follows:

" SEC. 7. *And be it further enacted*, That in all cases where there is or shall be imposed any *ad valorem* rate of duty on any goods, wares, or merchandise imported into the United States, and in all cases where the duty imposed by law shall be regulated by, or directed to be estimated or based upon, the value of the square yard, or of any specified quantity or parcel of such goods, wares, or merchandise, it shall be the duty of the collector within whose district the same shall be imported or entered to cause the actual market value or wholesale price thereof, at the period of the exportation to the United States, in the principal markets of the country from which the same shall have been imported into the United States, to be appraised,

and such appraised value shall be considered the value upon which duty shall be assessed.   That it shall be lawful for the owner, consignee, or agent of any goods, wares, or merchandise which shall have been actually purchased, or procured otherwise than by purchase, at the time, and not afterwards, when he shall produce his original invoice, or invoices, to the collector, and make and verify his written entry of his goods, wares, or merchandise, as provided by section thirty-six of the act of March two, seventeen hundred and ninety-nine, entitled "An Act to regulate the collection of duties on imports and tonnage," to make such addition in the entry to the cost or value given in the invoice as in his opinion may raise the same to the actual market value or wholesale price of such goods, wares, or merchandise, at the period of exportation to the United States, in the principal markets of the country from which the same shall have been imported; and it shall be the duty of the collector within whose district the same may be imported or entered to cause such actual market value or wholesale price to be appraised in accordance with the provisions of existing laws, and if such appraised value shall exceed by ten per centum or more the value so declared in the entry, then, in addition to the duties imposed by law on the same, there shall be levied, collected, and paid a duty of twenty per centum *ad valorem* on such appraised value : Provided, That the duty shall not be assessed upon an amount less than the invoice or entered value, any act of Congress to the contrary notwithstanding."

The other section is as follows :

" SEC. 9.  *And be it further enacted,* That in determining the dutiable value of merchandise hereafter imported, there shall be added to the cost, or to the actual wholesale price or general market value at the time of exportation in the principal markets of the country from whence the same shall have been imported into the United States, the cost of transportation, shipment, and transshipment, with all the expenses included from the place of growth, production, or manufacture, whether by land or water, to the vessel in which shipment is made to the United States, the value of the sack, box, or covering of any kind in

which such goods are contained; commission at the usual rates, but in no case less than two and a half per centum; brokerage, export duty, and all other actual or usual charges for putting up, preparing, and packing for transportation or shipment. And all charges of a general character incurred in the purchase of a general invoice shall be distributed pro rata among all parts of such invoice, and every part thereof charged with duties based on value shall be advanced according to its proportion, and all wines or other articles paying specific duty by grades shall be graded and pay duty according to the actual value so determined: *Provided*, That all additions made to the entered value of merchandise for charges shall be regarded as part of the actual value of such merchandise, and if such addition shall exceed by ten per centum the value so declared in the entry, in addition to the duties imposed by law, there shall be levied, collected, and paid a duty of twenty per centum on such value: *Provided*, That a duty shall in no case be assessed upon an amount less than the invoice or entered value: *Provided further*, That nothing herein contained shall apply to long-combing or carpet wools costing twelve cents or less per pound, unless the charges so added shall carry the cost above twelve cents per pound, in which case one cent per pound duty shall be added."

In our opinion the rule declared in the provisos in both these sections, that the duty shall not be assessed upon an amount less than the invoice or entered value, is applicable to the valuation of wools, for the purpose of determining the rate of duty chargeable upon them under the acts of 1867 and 1872, and was therefore properly applied in the present case. It is quite true that the act of 1867 provides a different classification of wools, and imposes a specific and not an *ad valorem* duty; but, nevertheless, the duty varies according to the value per pound of the article, and a valuation is, therefore, as necessary to the ascertainment of the rate of duty, as if it were strictly an *ad valorem* duty, and there is nothing in the act of 1867 which, by express words or necessary implication, repeals the proviso in question, as found in the previous acts of 1865 and 1866.

In the act of 1865, the rule is declared to be of general application, not only " in all cases where there is or shall be imposed any *ad valorem* rate of duty on any goods, wares, or merchandise imported into the United States," but also " in all cases where the duty imposed by law shall be regulated by, or directed to be estimated or based upon, the value of the square yard, r of any specified quantity or parcel of such goods, wares, or merchandise." There is no more inconsistency between this provision and the act of 1867, than if the proviso had been expressly added to the section of the latter act, which contains the substituted classification of wools for dutiable purposes, and fixes the varying rates of duty upon them.. It would be an unsound and unsafe rule of construction which would separate from the tariff revenue system, consisting of numerous and diverse enactments, each new act altering it, in any of its details, or prescribing new duties in lieu of existing ones on particular articles. The whole system must be regarded in each alteration, and no disturbance allowed of existing legislative rules of general application beyond the clear intention of Congress. " In the interpretation of our system of revenue laws, which is very complicated," as was said in the case of *The United States* v. *Sixty-seven Packages of Dry Goods*, 17 How. 85, 93, " this court has not been disposed to apply with strictness the rule which repeals a prior statute by implication, where a subsequent one has made provision upon the same subject, and differing in some respect from the former, but have been inclined to uphold both, unless the repugnancy is clear and positive, so as to leave no doubt as to the intent of Congress."

The judgment of the Circuit Court is

*Affirmed.*