## UNITED STATES v. PUHAC.

(District Court, W. D. Pennsylvania. May Term, 1920.)

### No. 1.

1. **Statutes** ⊙⟹165—**Provision imposing penalties repealed by later statute prescribing different penalties.**

   National Prohibition Act, which imposes penalties for various violations, *held* to repeal provisions of the internal revenue laws, which prescribe different penalties for the same acts.

2. **Indictment and information** ⊙⟹109—**Good where it charges offense, although drawn under different statute.**

   Where an indictment properly charges an offense under the laws of the United States that is sufficient to sustain it, although it may have been drawn on the supposition that the offense charged was covered by a different statute.

3. **Intoxicating liquors** ⊙⟹137—**"Property designed for the manufacture of liquor" defined.**

   The words "property designed for the manufacture of liquor," as used in National Prohibition Act, tit. 2, § 25, are broad enough to include a still and distilling apparatus whether set up or not, and mash, wort, and wash.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Property.]

Criminal prosecution by the United States against Andy Puhac. On motion to revise sentence. Denied.

E. Lowry Humes, of Pittsburgh, Pa., for the United States.

ORR, District Judge. In this case the indictment was drawn in the same form as the indictments hereinafter referred to; a true bill was found, and the defendant pleaded guilty. The amount of whisky manufactured by the defendant was five gallons. The court imposed a sentence of $100. Thereupon the United States attorney moved the court to reconsider its judgment in imposing such sentence, upon the ground that said sentence was improvidently and illegally imposed, because the acts of Congress under which the indictment was drawn fixed a minimum penalty of both fine and imprisonment.

Since the passage of the National Prohibition Act (41 Stat. 305), many indictments have been drawn under certain sections of the Revised Statutes, which were passed by Congress for the purpose of securing to the United States internal revenue. True bills have been found upon such indictments, and defendants have been before the court for sentence. A grave doubt arose in the minds of the judges as to whether or not, since the passage of the National Prohibition Act, the revenue laws should be invoked for the punishment of such offenders. In other words, the court has been extremely doubtful as to the propriety of imposing the punishment provided for the violation of such revenue laws, where the indictments disclose, not only violations of the revenue law, but also violations of the National Prohibition Law. This involves the question whether the revenue laws, under which the indictments were drawn, have been repealed by the National Prohibition Law, either in whole or in part. Usually the counts in such indictments are four in number—the first charging an attempt to defraud the United States of the internal revenue tax upon spirits distilled by the defendant; the second charging the possession of a still, set up without registering said still with the collector of internal revenue; the third charging the making and fermenting of mash, wort, and wash fit for distillation on premises other than an authorized distillery; and the fourth charging the separation of distilled spirits from the fermented mash, wort, and wash.

The first count is usually drawn under section 3257 of the Revised Statutes (Comp. St. § 5993), which imposes a penalty of forfeiture of the distillery and distilling apparatus, distilled spirits, and all raw materials for the production thereof, found on the premises, and for a fine of not less than $500 nor more than $5,000, and an imprisonment of not less than 6 months nor more than 3 years. The second count is usually drawn under section 3258 of the Revised Statutes (Comp. St. § 5994), which provides for a penalty of $500 and that the offender be fined not less than $100 nor more than $1,000 and imprisoned for not less than 1 month nor more than 2 years. The third and fourth counts are usually drawn under section 3282 of the Revised Statutes (Comp. St. § 6022), which imposes a fine of not less than $500 nor more than $5,000 and imprisonment for not less than 6 months nor more than 2 years.

In association with the sections of the Revised Statutes heretofore referred to are many others, which provide many details with respect to manufacturing, and especially with respect to government supervision, all for the purpose of securing to the government its lawful rev-

enue from what in many states was the lawful manufacture of a lawful product. For example, section 3252 of the Revised Statutes (Comp. St. § 5987), which imposes a penalty upon one who adds any substance to distilled spirits before the tax is paid thereon, for the purpose of creating a fictitious proof; section 3260 (Comp. St. § 5997), which provides that every person intending to commence the business of distilling, shall execute a bond to the Commissioner of Internal Revenue, conditioned that he shall faithfully comply with all the provisions of law, under penalty of both fine and imprisonment; section 3263 (Comp. St. § 6001), which provides that a plan of the distillery shall be transmitted to the Commissioner of Internal Revenue, with a verification of its accuracy.

Turning, now, to the National Prohibition Act, we first observe that its title is:

"To prohibit intoxicating beverages, and to regulate the manufacture, production, use and sale of high-proof spirits for other than beverage purposes, and to insure an ample supply of alcohol and promote its use in scientific research and in the development of fuel, dye, and other lawful industries."

As indicated by the title, we should expect the provisions of the act to be broad and comprehensive, and thus we find them.

Title 2, section 3, of the act provides:

"No person shall, on or after the date when the Eighteenth Amendment to the Constitution of the United States goes into effect, manufacure, sell, barter, transport, import, export, deliver, furnish or possess any intoxicating liquor except as authorized in this act."

Congress apparently intended that whatever authorization there should be for the manufacture of liquor was to be found in the National Prohibition Act, and not in any other act. The act is full of provisions with respect to the authorization of the manufacture and sale of liquor for nonbeverage purposes and wine for sacremental purposes.

[3] Title 2, section 25, of the act provides:

"It shall be unlawful to have or possess any liquor or property designed for the manufacture of liquor intended for use in violating this title, or which has been so used, and no property rights shall exist in any such liquor or property."

Then follows the provision for the issue of search warrants and seizure in pursuance of the warrants, with the provision that liquor or property so unlawfully held or possessed, or that had been so unlawfully used, and all property designed for the manufacture of liquor, shall be destroyed, unless the court shall otherwise order. The words "property designed for the manufacture of liquor," in this section, are broad enough to include a still and distilling apparatus, whether set up or not, and broad enough to include mash, wort, and wash.

Referring, now, to the complaint usually embodied in the first count of the indictments under consideration, how can it be said that a defendant attempted to defraud the United States of the internal revenue tax on spirits distilled by him, when he probably was willing to pay the tax, provided he could continue his distillation. But manufacture by him for beverage purposes was wholly forbidden by the National Pro-

hibition Act. If he complied with all the provisions of the Revised Statutes passed to secure revenue to the United States, he could not manufacture whisky, because of the prohibition of the National Prohibition Act, unless he was authorized to do so by the very terms of that act.

It seems to me that the indictments under consideration should not have been based upon violations of the Revised Statutes, but upon violations of the terms of the National Prohibition Act. This is confirmed when we see the penalties in the latter act for offenses which clearly embrace the denunciations of the revenue laws. We have already observed the provision for the forfeiture of liquor and property designed for the manufacture of liquor. There are other provisions for forfeiture, as, for instance, of the vehicle in which liquor may be transported.

Title 2, section 29, of the act provides that—

"Any person who manufactures or sells liquor in violation of this title shall for a first offense be fined not more than $1,000, or imprisoned not exceeding six months, and for a second or subsequent offense shall be fined not less than $200, nor more than $2,000, and be imprisoned not less than one month nor more than five years."

[1] The penalty for the first offense is made less than any of the penalties attached to the offenses specified in the sections of the Revised Statutes upon which the indictments are drawn, but the penalty for the second offense is greater than in said sections of the Revised Statutes. There is clearly, then, an inconsistency in the matter of punishment, at least between the later act, which provides, in the main, more extreme penalties, and the sections of the Revised Statutes, which do not provide for such extreme penalties. But has the act any repealing clause? We find one relating to the repeal of inconsistent prior statutes relating to alcohol, and in the second title of the act, which relates to prohibition of intoxicating beverages, we find section 35, as follows:

"All provisions of law that are inconsistent with this act are repealed only to the extent of such inconsistency and the regulations herein provided for the manufacture or traffic in intoxicating liquor shall be construed as in addition to existing laws. This act shall not relieve any one from paying any taxes or other charges imposed upon the manufacture or traffic in such liquor. No liquor revenue stamps or tax receipts for any illegal manufacture or sale shall be issued in advance, but upon evidence of such illegal manufacture or sale a tax shall be assessed against, and collected from, the person responsible for such illegal manufacture or sale in double the amount now provided by law, with an additional penalty of $500 on retail dealers and $1,000 on manufacturers. The payment of such tax or penalty shall give no right to engage in the manufacture or sale of such liquor, or relieve anyone from criminal liability, nor shall this act relieve any person from any liability, civil or criminal, heretofore or hereafter incurred under existing laws."

The portion of the act just quoted contains a further provision for a penalty different from any penalty imposed for a similar offense under the Revised Statutes, so far as the same have been brought to our notice. We mention this because, as will be seen, the change in

the penalties is very important in determining whether or not, as between acts somewhat similar, the later repeals the former.

But it is apparent, from the first part of the section last quoted, that all the provisions of law which are inconsistent with the National Prohibition Act are repealed to the extent of such inconsistency. Are the provisions of the later act now under consideration inconsistent with the provisions found in the Revised Statutes? That they are *apparently* so may be urged from the difference in their purposes. The Revised Statutes, as we have said, were intended to protect the United States from loss of revenue in the conduct of what may or may not have been the lawful business of manufacturing intoxicating liquor for beverage purposes, whereas it appears in the National Prohibition Act, title 2, section 3, that—

"All the provisions of this act shall be liberally construed to the end that the use of intoxicating liquor as a beverage may be prevented."

There is a plain inconsistency between the purpose of the earlier acts and the purpose of the later act in such respect. Again, the later act is so broad and inclusive that it is difficult to find anything permitted by the Revised Statutes to be possessed or used in the manufacture of liquor which is not the subject of forfeiture and condemnation in the later act, except so far, perhaps, as that act relates to liquor for nonbeverage purposes. So far as forfeitures go for violation of the revenue laws, there appears to be nothing which may be excluded from forfeiture under the National Prohibition Act.

With respect to the penalties, it is observed that the penalties in the later act may be wholly different from the penalties imposed for violations of the Revised Statutes. Indeed, there seems to be such a clear repugnancy between the provisions of the Revised Statutes and the National Prohibition Act that the former must give way to the latter in prosecutions for the offenses set out in the indictments under consideration. Support for this position is found in the case of United States v. Tynen, 78 U. S. (11 Wall.) 88, 20 L. Ed. 153. In that case, Mr. Justice Field, who delivered the opinion, after considering two acts of Congress, uses the following language:

"The first act makes the punishment for the offenses designated imprisonment or fine. It provides that the punishment shall be one or the other, and in so doing declares that it shall not be both. The second act allows both punishments in the discretion of the court; it thus permits what the first law prohibits.

"Again, the act of 1813 provides that the imprisonment, when imposed as a punishment, shall not be less than three years, and may be extended to five. The act of 1870 allows the imprisonment to be fixed at one year, and from that period upwards to five years. In this also it permits what the first act forbids.

"Again, the act of 1813 declares that the fine, when imposed, shall not be less than $500. The act of 1870 allows the fine to be as low as $300, thus authorizing what the first act declares shall not be done.

"When repugnant provisions like these exist between two acts, the latter act is held, according to all the authorities, to operate as a repeal of the first act, for the latter act expresses the will of the government as to the manner in which the offenses shall be subsequently treated."

It is sufficient to hold, therefore, that the sections of the Revised Statutes are repealed, at least in respect to the penalties therein provided.

[2] In the treatment of those indictments drawn under the Revised Statutes, we have not been disposed to quash the same, for the reason that, while the several counts charged violations of the revenue laws, yet there may be found in the indictment a charge that the defendant committed an offense under the National Prohibition Act. If he manufactured spirits for beverage purposes, he violated the later act. If he had a still or distilling apparatus set up, or wort, wash, and mash fit for distillation, he violated the National Prohibition Act, because he had in his possession property designed for the manufacture of liquor intended for use in violating title 2 of said act.

We have recognized the ruling in Williams v. United States, 168 U. S. 382, 18 Sup. Ct. 92, 42 L. Ed. 509, that where an indictment properly charges an offense under the laws of the United States, that is sufficient to sustain it, although the United States attorney may have supposed that the offense charged was covered by a different statute.